Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RICHARD HEYDEL,<br><br>    Plaintiff,<br><br>    v.<br><br>ON DECK CAPITAL, INC., NOAH BRESLOW, DANIEL S. HENSON, CHANDRA DHANDAPANI, BRUCE P. NOLOP, MANOLO SANCHEZ, JANE J. THOMPSON, RONALD F. VERNI, and NEIL E. WOLFSON,<br><br>    Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

Plaintiff Richard Heydel ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.      This is an action against On Deck Capital, Inc. ("On Deck" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in

1

connection with the proposed acquisition (the "Proposed Transaction") of On Deck by Enova International, Inc. ("Enova") and Energy Merger Sub, Inc., an indirect wholly owned subsidiary of Enova.

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company has offices in New York City.

5.  In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.  Plaintiff is, and has been at all relevant times hereto, an owner of On Deck's common stock.

7.  Defendant On Deck operates an online platform for small business lending in the United States, Canada, and Australia. The Company is incorporated in Delaware and

headquartered in New York City. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "ONDK."

8. Defendant Noah Breslow ("Breslow") is Chief Executive Officer and Chairman of the Board of the Company.

9. Defendant Daniel S. Henson ("Henson") is a director of the Company.

10. Defendant Chandra Dhandapani ("Dhandapani") is a director of the Company.

11. Defendant Bruce P. Nolop ("Nolop") is a director of the Company.

12. Defendant Manolo Sanchez ("Sanchez") is a director of the Company.

13. Defendant Jane J. Thompson ("Thompson") is a director of the Company.

14. Defendant Ronald F. Verni ("Verni") is a director of the Company.

15. Defendant Neil E. Wolfson ("Wolfson") is a director of the Company.

16. Defendants Breslow, Henson, Dhandapani, Nolop, Sanchez, Thompson, Verni, and Wolfson are collectively referred to herein as the "Individual Defendants."

17. Defendants On Deck and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

18. On July 28, 2020, On Deck and Enova issued a press release announcing that they had entered into a definitive agreement under which Enova will acquire all outstanding shares of On Deck in a cash and stock transaction. Under the terms of the agreement, On Deck shareholders will receive $0.12 per share in cash and 0.092 shares of Enova common stock for each share of OnDeck held. The press release states, in pertinent part:

3

**Enova to Acquire OnDeck to Create a Leading FinTech Company Serving Consumers and Small Businesses**

Transaction Valued at $1.38 Per Share, Including $0.12 in Cash; Represents 90.4% Premium to OnDeck's Closing Price as of July 27, 2020

Highly Accretive Transaction with Significant Cost and Revenue Synergy Opportunities

Combines World-Class Capabilities in Consumer and Small Business Online Lending Creating a Company with Scale and Financial Strength to Drive Further Growth and Shareholder Value

NEWS PROVIDED BY
**Enova International, Inc.**
Jul 28, 2020, 16:16 ET

CHICAGO and NEW YORK, July 28, 2020 /PRNewswire/ -- Enova International (NYSE: ENVA) and OnDeck® (NYSE: ONDK), today announced that they have entered into a definitive agreement under which Enova will acquire all outstanding shares of OnDeck in a cash and stock transaction valued at approximately $90 million. The implied price of $1.38 per OnDeck share reflects a 43.6% premium to its 90-day volume weighted average price and a 90.4% premium based on the closing price of $0.73 per OnDeck share on July 27, 2020.

*   *   *

**Transaction Details**

The transaction is valued at approximately $90 million, of which $8 million will be paid in cash. Under the terms of the agreement, OnDeck shareholders will receive $0.12 cents per share in cash and 0.092 shares of Enova common stock for each share of OnDeck held.

Upon completion of the transaction, OnDeck shareholders will own approximately 16.7% of the combined entity, with Enova shareholders owning approximately 83.3%.

The transaction has been unanimously approved by the boards of directors of both companies and is subject to OnDeck shareholder approval and HSR approvals, along with customary closing conditions. The transaction is expected to close this year.

**Board and Management**

4

Mr. David Fisher will continue to lead the combined company. Mr. Noah Breslow will join the company as Vice Chairman and serve on the Enova management team.

**Advisors**

Jefferies LLC is acting as exclusive financial advisor to Enova, and Vedder Price P.C. is acting as its legal advisor. Evercore is acting as financial advisor to OnDeck and Kirkland & Ellis LLP is acting as its legal advisor.

*       *       *

**About Enova**

Enova (NYSE: ENVA) is a leading provider of online financial services to non-prime consumers and small businesses, providing access to credit powered by its advanced analytics, innovative technology, and world-class online platform and services. Enova has provided nearly 7 million customers around the globe with access to more than $20 billion in loans and financing. The financial technology company has a portfolio of trusted brands serving consumers, including CashNetUSA®, NetCredit® and Simplic®; two brands serving small businesses, Headway Capital® and The Business Backer®; and offers online lending platform services to lenders. Through its Enova Decisions™ brand, it also delivers on-demand decision-making technology and real-time predictive analytics services to clients. You can learn more about the company and its brands at www.enova.com.

**About OnDeck**

OnDeck (NYSE: ONDK) is the proven leader in transparent and responsible online lending to small business. Founded in 2006, the company pioneered the use of data analytics and digital technology to make real-time lending decisions and deliver capital rapidly to small businesses online. Today, OnDeck offers a wide range of term loans and lines of credit customized for the needs of small business owners. The company also offers bank clients a comprehensive technology and services platform that facilitates online lending to small business customers through ODX, a wholly owned subsidiary. OnDeck has provided over $13 billion in loans to customers in 700 different industries across the United States, Canada and Australia. The company has an A+ rating with the Better Business Bureau and is rated 5 stars by Trustpilot. For more information, visit www.ondeck.com.

19.     On September 8, 2020, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

20.   The Proxy Statement, which recommends that On Deck shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (1) On Deck's and Enova's financial projections; (2) the financial analyses performed by On Deck's financial advisor, Evercore Group L.L.C. ("Evercore"), in connection with its fairness opinion; and (3) potential conflicts of interest involving Evercore.

21.   The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendations of the OnDeck Board of Directors and Its Reasons for the Merger; (ii) Opinion of Evercore Group L.L.C.; and (iii) Certain Unaudited Prospective Information.

22.   Unless and until the material misstatements and omissions (referenced below) are remedied before the October 7, 2020 shareholder vote on the Proposed Transaction, On Deck shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

#### 1. Material Omissions Concerning On Deck's and Enova's Financial Projections

23.   The Proxy Statement omits material information concerning On Deck's and Enova's financial projections.

24.   The Proxy Statement provides that On Deck's management presented to the Board two sets of financial projections, which were updated throughout the sales process, stating in pertinent part:

> On June 4, 2020, the OnDeck Board held a meeting with OnDeck management and representatives of Evercore and Kirkland in attendance. During that meeting, OnDeck management presented to the OnDeck Board two sets of

6

preliminary financial projections based on the following scenarios for OnDeck's performance on a stand-alone basis: (i) Scenario 1 assumed, among other things, (x) a quick economic recovery accompanied by increased consumer confidence and strong loan origination growth in the second half of 2020, (y) OnDeck obtaining a long-term sustainable amendment from its lenders under the Corporate Line Facility and (z) OnDeck securing new mezzanine debt in an amount sufficient to satisfy its liquidity needs; and (ii) Scenario 2 assumed a slower economic recovery and lower loan origination levels as compared to Scenario 1 (collectively, the "Scenarios").

\* \* \*

On June 16, 2020, the OnDeck Board held a meeting with OnDeck management and representatives of Evercore and Kirkland in attendance to discuss, among other things, OnDeck's liquidity needs and OnDeck's restart to its loan originations. At the meeting OnDeck management presented financial projections for each of the Scenarios previously reviewed with the OnDeck Board that were updated to reflect the COVID-19 pandemic's ongoing impact on OnDeck's results and operations.

\* \* \*

On June 30, 2020 . . . OnDeck management discussed OnDeck's operational performance and its liquidity position in comparison to each of the Scenarios that were updated as of June 23, 2020. . . . The OnDeck Board then engaged in an in-depth discussion with respect to the assumptions underlying the Scenarios.

\* \* \*

On July 12, 2020, the OnDeck Board held a meeting with OnDeck management and representatives of Evercore and Kirkland in attendance. The OnDeck Board further reviewed and discussed the Scenarios, including the likelihood that Scenario 1 (as then currently contemplated) would be unachievable for OnDeck as a stand-alone entity due to the current status of the economic recovery from the COVID-19 pandemic, the related weaker-than-anticipated restart in loan originations and OnDeck's inability to fund the loan originations modeled in Scenario 1. Following these discussions, the OnDeck Board determined that Scenario 2 was the most realistic set of projections and approved Scenario 2 for use by Evercore in connection with its financial analysis and opinion[.]

25.     The Proxy Statement, however, fails to adequately disclose the details of the Scenario 1 projections, including each update to such projections, that were presented to the Board and other parties during the sales process leading up to the Proposed Transaction.

26. The Proxy Statement provides that "[i]n connection with the OnDeck Board's consideration of the merger and other strategic alternatives available to OnDeck, OnDeck management prepared certain unaudited financial projections regarding OnDeck's future financial performance for the years 2020 through 2024 on a stand-alone basis, assuming OnDeck would continue as an independent company without giving effect to the merger, which are referred to herein as the OnDeck Projections."

27. The Proxy Statement provides that "[i]n connection with discussions relating to the merger, Enova management prepared certain unaudited financial projections regarding Enova's future financial performance on a stand-alone basis, which we refer to herein as the Enova Projections, and which were made available to OnDeck management. In connection with its evaluation of the merger, OnDeck management reduced by 10% the net income forecasts in the Enova Projections for the calendar years 2020 through 2024. The Enova Projections as adjusted by OnDeck management are referred to herein as the OnDeck Adjusted Enova Projections."

28. The Proxy Statement provides tables of the purported OnDeck Projections, Enova Projections, and OnDeck Adjusted Enova Projections (collectively, the "Projections").

29. The Proxy Statement, however, fails to disclose the following concerning the Projections: (1) all line items used to calculate EBITDA and net income; and (2) a reconciliation of all non-GAAP to GAAP metrics.

30. The disclosure of the aforementioned projected financial information is material because it would provide On Deck shareholders with a basis to project On Deck's and the combined company's future financial performance and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future

prospects of the Company. Without such information, which is uniquely possessed by On Deck and its financial advisor, the Company's shareholders are also unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

31. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

32. Accordingly, in order to cure the materially misleading nature of the aforementioned financial projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these metrics. Such projections are necessary to make the non-GAAP projections included in the Proxy Statement not misleading.

33. The above-referenced omitted information, if disclosed, would significantly alter

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Sept. 27, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

the total mix of information available to On Deck shareholders.

### 2. Material Omissions Concerning Evercore's Financial Analyses

34. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning Evercore's financial analyses.

35. With respect to Evercore's "*Selected Public Company Trading Analys[e]s*" of On Deck and Enova, the Proxy Statement fails to disclose the individual multiples and financial metrics of each company utilized by Evercore in its analyses.

36. The Proxy Statement fails to disclose the following concerning Evercore's "*Dividend Discount Model Analysis*" of On Deck and Enova: (1) potential dividends that OnDeck and Enova are estimated to be able to pay to their respective equity holders for the six months ending December 31, 2020 and for the calendar years ending December 31, 2021 through December 31, 2024, and the projected terminal value of future dividends after the calendar year 2024 payable to their respective equity holders as of December 31, 2024; (2) the OnDeck Projections and OnDeck Adjusted Enova Projections of total assets, tangible common equity, and net income, and all underlying line items thereto; and (3) the individual inputs and assumptions underlying the (i) net income multiples of 4.0x to 8.0x and (ii) discount rates from 20% to 30% and from 14% to 18%.

37. With respect to Evercore's "*Equity Research Analyst Price Targets*" of On Deck and Enova, the Proxy Statement fails to provide the individual price targets analyzed and the sources thereof.

38. The Proxy Statement fails to disclose the following concerning Evercore's "*Contribution Analysis*": (1) the Wall Street analyst estimates utilized by Evercore in its analysis; and (2) the sources of those estimates.

39. The Proxy Statement fails to disclose the following concerning Evercore's

"*Illustrative Price to Tangible Book Value Analysis*": (1) the individual inputs and assumptions underlying the price to TBVPS multiple reference range of 2.50x to 4.50x; and (2) the number of fully diluted shares of Enova common stock outstanding as of June 30, 2020.

40. The valuation methods, underlying assumptions, and key inputs used by Evercore in rendering its purported fairness opinion must be fairly disclosed to On Deck shareholders. The description of Evercore's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, On Deck shareholders are unable to fully understand Evercore's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to On Deck shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Evercore

41. The Proxy Statement omits material information concerning potential conflicts of interest involving Evercore.

42. The Proxy Statement provides that:

> Pursuant to the terms of Evercore's engagement letter with OnDeck, OnDeck has paid Evercore retainer fees in the amount of approximately $750,000, and OnDeck has agreed to pay Evercore additional fees for its services in the amount of approximately $3.25 million, of which $1 million was paid upon delivery of Evercore's opinion and the balance of which will be payable contingent upon the consummation of the merger, as well as an additional fee in an amount not to exceed $1 million, which is payable at OnDeck's sole discretion.

43. The Proxy Statement, however, fails to disclose the circumstances under which On Deck will pay Evercore the discretionary fee and whether On Deck intends to pay Evercore such fee.

44. Disclosure of a financial advisor's compensation and potential conflicts of interest

to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

45.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to On Deck shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

48.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

49.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote

on the Proposed Transaction.

50. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

51. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

52. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

56. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 27, 2020

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*